Good afternoon. I've been sent. Good morning, all of you. It's afternoon. Good afternoon. I'm Judge Dennis. I'm joined by Judge Dickinson and Judge Willett will be your channel, your panel on this case, which is Clearview, L.L.C., et al. v. Lanrick Contractors, et al. Whenever you're ready, Mr. Bollinger, you may proceed. Thank you, Your Honor. May it please the Court, Brett Bollinger on behalf of Cleartrac, L.L.C., and Russell Kent Moore. Your Honor, the United States Court of Appeals reviews rulings on application of res judicata issues de novo, and any doubt concerning the application of res judicata should be resolved against its application. The issue before the Court today is defendants' motion to dismiss on res judicata grounds. The plaintiffs believe that res judicata shouldn't apply, but what's actually happened in this case is the decision of the state court have been sort of twisted and morphed into much more than what they actually were. Essentially, defendants want to take the state court decision that simply found that Cleartrac didn't exist any longer as an entity to bring a lawsuit and change that decision into a ruling that the Texas court judgment magically disappears, and nobody has the right to enforce that judgment. This lawsuit arises from Cleartrac and Mr. Moore's attempts to collect on a judgment that was rendered in Texas. Lanrick hasn't paid the judgment. They've used all kind of devices to try and avoid payment, and here we are. A brief history is probably useful to the Court. Cleartrac filed suit in to recover on a debt that was owed. On August 26, 2010, the Brazos County Court entered judgment in favor of Cleartrac and against Lanrick. Lanrick hasn't paid the judgment. On November 21, 2011, the Texas judgment was made executory in Tangipoa Parish. Cleartrac filed a petition to enforce the judgment in district court and state court in Tangipoa Parish to collect on the Texas judgment. After that suit was pending for about two years, Lanrick filed an exception, no cause of action, asserting that Cleartrac no longer existed under the Texas business code. What that argument was was simply that the entity didn't exist any longer. Now, the trial court agreed with that. That's actually the subject of a separate appeal that's in state at the First Circuit in Louisiana. Before the court could actually get to that decision, Mr. Moore and Cleartrac filed this lawsuit in order to attempt to preserve their rights. So in response to that is how we get here. In response to that, Lanrick files a motion to dismiss for res judicata. The trial court granted that motion as to Cleartrac and somewhat surprisingly also granted it as to Mr. Moore. Now, I'll explain why we don't think res judicata applies at all in this case, but even if it applies to the claims of Cleartrac, it certainly doesn't apply to the claims of Mr. Moore. Res judicata requires five elements, that there's a valid judgment, that there's a final judgment, that the parties are the same, that the cause of action asserted in the second suit existed at the time of the judgment in the first suit, and that the cause of action in the second suit arose from the same transaction or occurrence. The first basic problem is we don't have a final judgment. Now, we initially pointed to the fact that Cleartrac has filed a suspensive appeal to the judgment in state court, and under Louisiana law, a suspensive appeal suspends the judgment. However, subsequently, we learned or realized a more fundamental problem with the final judgment issue, and in fact, this was brought up by all three judges when the first circuit had its oral argument. There's a basic problem with the final judgment. Under Louisiana law, when a judgment grants an exception but also allows an opportunity to amend, that judgment cannot be and is not a final judgment. That's exactly what happened in this case. In a subsequent letter brief we have submitted, we have cited the case of Bankston v. Guzman, Williams v. City of Bastrop, and Succession of Agamee that all explain that problem and that there is no final judgment in this case, so there can be no res judicata. Now, the second significant problem is that the parties aren't the same, and in fact, the parties couldn't be the same. In state court, Cleartrack filed to enforce the judgment. At that time, Cleartrack and Mr. Moore believed that Cleartrack was the only proper party to enforce that. If Cleartrack exists as an entity, it's Cleartrack's right to enforce. If not, it may be Mr. Moore's right, but at that time, everyone believed that it was Cleartrack's right. Now, it's important to decide because that is fundamental to what res judicata could apply to. The only thing decided by the state court was that Cleartrack did not survive as an entity under the Texas Business Code to enforce the judgment. The Texas Business Code provides for various provisions on how entities operate with regard to this issue if an entity is being dissolved, but if there are of dissolution, the entity survives until all judgments, orders, and decrees have been fully executed. It's Cleartrack's position that it still exists because the Texas court judgment, well, the case that resulted in Texas court judgment was clearly brought well before three years of the anniversary of dissolution. It survives until that judgment is executed, but that's all that was decided. The state court said, no, we disagree with that. Cleartrack does not continue on as an entity. That's all. So, based on that, it dismissed the or granted the exception dismissing the state court action. The issue comes in. They also allowed the opportunity for Mr. Moore to substitute in, and opposing counsel brings the argument and says, well, if he was allowed the opportunity to substitute in, he should have done that, and we wouldn't be here in federal court. The problem is that misses a fundamental piece to the state court decision. The defect that was perceived by the state court is not possible of being cured. We've cited to you Taylor v. Babin, some at Office Park, and the Jones v. America's case that all show that when the original claimants had no right of action, that defect cannot be You have no standing to amend. Mr. Ballinger, you know we're interested in federal jurisdiction as a threshold matter before reaching res judicata. You're going to reserve a little bit of time for diversity of jurisdiction and amount of controversy? Absolutely, Your Honor. I will address both of those. I will deviate from this for a point and just wrap up on this saying the parties aren't the same as far as they could not be the same. You have an LLC in the first case, and you have Mr. Moore in the second case. With regard to jurisdiction, we have supplemented with regard to diversity issues, and there really is no question on diversity that, you know, Cleartrack is a Texas LLC. Mr. Moore is a Texas resident. Both of them are deemed for diversity purposes to be Texas citizens, whereas the defendants... Maybe stop there when you say they are deemed to be Texas citizens. Well, they are. I apologize, Your Honor. Okay, but I'm sure you've read the the case cited. The mid-cap decision seems to make it fairly clear that alleging someone to be a resident isn't proof sufficient to show that they're a citizen. And I understand that, Your Honor. We have submitted a subsequent brief with... In response to the court's request, we have submitted a letter brief stating that exactly and providing the information to exactly where they have shown where Mr. McKellar has testified in his deposition as to his status. Right. McKellar, I agree with you. McKellar was... Domiciled in Louisiana, but I'm worried about Moore. Well, with regard to that, Mr. McKellar confirmed in his deposition with regard to Moore that he was in Texas, that everything took place in Texas, and that on the filings with the Texas Secretary of State that have been provided, his office has been represented and shown that it is in Texas, in Bryan, Texas, and that he is in Texas, Your Honor. And showing that that has not been raised, there's not been an issue or a question about everyone in this case has deemed to him to have been in Texas. With regard to the amount of controversy, it's a fairly simple issue that this is really a discussion of whether the original judgment included the interest in the judgment or not. Because the Texas judgment expressly included interest as a distinct element of the judgment, that amount is included in the amount of controversy. Wright and Miller has a clear section on this. The distinction is whether the interest is provided in the judgment or whether the interest is some accessory statutory interest. In this case, the judgment provided for $51,000 in change in the judgment. It provided pre-judgment interest. It provided attorney's fees and costs. And the judgment itself included interest at the rate of 5%. This is not statutory interest that is just accruing because we have a judgment. The judgment itself provided for the interest. I honestly didn't read Wright and Miller as that clear on this point. It seems to be governed by a Supreme Court case that's 150, 160 years old, right? Do you have any circuit authority that you would point us to? Or is it really the best case you've got is this West Virginia case from 50 years ago? Well, Your Honor, so the U.S. Supreme Court has stated in Brown v. Webster that interest is included when it's an essential ingredient in the principal claim and that it's included in the amount of controversy where the interest was a part of the plaintiff's principal claim rather than an accessory demand. The Wright and Miller actually discusses this exactly and what Wright and Miller says is if the judgment in one action includes interest, the amount of controversy in a suit to recover on the prior judgment is measured by the amount of the first judgment, including the interest. And Your Honor, we have cited, I agree with you, there's not a lot of circuit law out there. Is there any circuit law? I have not found any. Why isn't, I mean, Wright and Miller goes into what seemed to me a pretty elemental and persuasive policy argument that what the Supreme Court was getting at that decision, I guess, came out just a couple of years after the original 1332 statutory language in question that excludes interest. The concern would be to not allow a litigant to get a judgment and wait until the interest accrued sufficient to equal the amount of controversy. But that would seem to be exactly what the rule of law you're urging would allow. Well, Your Honor, as noted by the district court, to find the opposite is actually the minority view. We have cited to you the Grunblatt case, we have cited to you the Brannan case, which actually is a, I apologize, there are certain, the Brannan case, which is a Third Circuit case, there's not a Fifth Circuit case on this. The Williamson case, which is a Sixth Circuit case, there is law on this issue. And the distinction is, we've been trying to collect this judgment for years. It's not as though we've just been sitting out there saying we're going to wait for this gets to a certain amount and then go collect it. We've been trying to collect this judgment. And the distinction is, if this was just a judgment in Texas, and the Texas court said, here's your judgment. And it accrues statutory interest. No, I agree with you, it wouldn't be in the amount of controversy. But the law has been very clear that when the judgment itself says, this judgment includes interest at x rate, that is included in the amount of controversy to determine whether you have federal jurisdiction, Your Honor. Going back to the issue on res judicata. The other issue that they've argued is that Mr. Moore somehow is in privity with clear track. Well, first of all, he can't be in privity in this type of a case. The right in state court was either the LLC is right, or it was Mr. Moore's right. So they could not in this type of case be in privity. However, even if the court finds that Mr. Moore is considered to be a privy or considered to be in privity, the only thing that's going to impact him on res judicata is exactly what happened in the state court. The only thing the state court found was that clear track didn't exist or continue to exist to bring the lawsuit. So if you get to the decision of, well, this is also going to impact Mr. Moore, the only thing that can apply to him for res judicata purposes is exactly that, that clear track doesn't exist, doesn't have anything to do with whether he has the right to bring the lawsuit or not. It simply is okay for res judicata purposes. That state court decision doesn't apply or that state court decision applies to you and clear track doesn't have the right. Even if you get past all the hurdles on res judicata, you still have the exceptional circumstances exception. Louisiana Revised Statute 134232 has an exception to res judicata for exceptional circumstances. It's been shown that that's when complex procedural situations deprive a litigant from being able to bring their claim. That's what happened. They're trying to say, Mr. Moore just can't even enforce the Texas judgment. It just goes away magically and nobody can enforce the Texas judgment. We think we've shown that res judicata has numerous problems of the five factors of res judicata. They just can't meet them. There is no final judgment, which is a clear problem. They're not the same parties. There's no privity. And even if there is res judicata in this case, all it finds is that that would affect clear track, whether it is or not able to bring the case that would not mean Mr. Moore cannot bring his case. And we're asking your your honors to grant this appeal and reverse the trial court's decision on res judicata. Thank you, sir. Mr. D. Vittorio. Yes, your honor. Yes, your honor. Frankie Vittorio. Um, here on behalf of the defendants, your honors, this is the most blatant case of forum shopping I have ever seen. In 2010, the plaintiffs obtained a default judgment, allegedly, uh, to which service remains disputed against Landrick Contractors LLC and the amount of approximately $57,900.47. There's no way under which, uh, that amount, the amount of that judgment, the 2010 Texas judgment can be calculated at the time it was rendered to total $75,000. Your honor, your honors, the plaintiffs do not even argue that it's possible to make that calculation in 2010. The plaintiffs initially selected the form and instituted this suit based upon that judgment, asserting the identical claims that in Louisiana State Court that they've brought here in this suit. They litigated these claims in state court for years until they received a judgment dismissing their claims adverse to their interests in which they filed the suit in the Eastern District of Louisiana. Clear track only acts through Mr. Moore. The plaintiff's complaint alleges that he is the sole member of the dissolved entity formerly known as Clear Track, that he directs everything purportedly done by it, that the same council represented him and Clear Track in this suit in the state court. Clear Track has not operated in years and has no one except Mr. Moore. Mr. DeVittorio, do I pronounce it DeVittorio? Yes, your honor. I appreciate it's a little harder for me to follow when you're reading that quickly. Can we just break these into three issues and take them one at a time? So what's your position on diversity jurisdiction? I believe the parties are residents of different states. On that element, I do not believe the amount of controversy totals the requisite amount. As I said, the judgment is for about $57,000 in render. Although interest awarded a specific amount of interest, perhaps a proof of interest. Before you jump to amount in controversy, can you point us to something in the record that shows that Mr. Moore is a citizen of Texas? No, your honor. So under what authority would we operate on the assumption that he is? I guess your honor, the burden of proven jurisdiction or diversity of Mr. Moore was not on my side. I have outside of the record knowledge that indicates he would be. I certainly have no information that I could present the court with that he's a Louisiana domicile. Okay, well then you were going to move to amount in controversy and you're staying as categorically the opposite position as he is, but it does seem to be a little bit of a blurred area in law. Is the distinction between whether interest is integral in the judgment or it's ancillary? Or is it a chronological distinction that interest up until the judgment is included, but no interest post judgment? Well, your honor, so perhaps I've been working backwards to some extent, but the interpretation argued by opposing counsel would mean that every single judgment render that includes interest at some point would become subject to federal jurisdiction. And that simply cannot be the case. I do have a case, it's the 10th circuit case, cited in my memorandum that says interest is not counted. Let's see, I'm sorry. That jurisdiction is not arise simply by virtue of the delay in payment, which is what this would be. There's no way this judgment, as I said, there's no way this judgment could be calculated in 2010 when rendered that would give you the amount necessary for federal court jurisdiction. I think that the interest that I believe is arguably inclusive or able to be included would be accrued interest, interest that exists and is awarded in terms of an amount as part of the judgment when rendered. And in my memorandum, I think I even make that calculation. I think it might've brought the total to about $58,000 at the time of the judgment was rendered. The only way that they can get to the $75,000 is if they accrue indefinite post-judgment interest, which can't be the rule. It's just, there's no support and authority for that. I don't think there was ever any intent to confer federal jurisdiction eventually on every judgment rendered by any court. It just leads to, for lack of a better term, an absurd consequence. Where do you think Chief Judge Brown came up with the notion that it is the majority rule? Well, I mean, all I can do is rely upon the opinion and I think perhaps there's a miss, some confusion perhaps between the fact that interest is awarded in the judgment. The term misconstruing that terminology to include the continuing after judgment. I don't see where Judge Brown explained the case law or distinguished the case law that is clear that it's not, you don't arrive at federal jurisdiction simply by the delay of payment. So all I can do, Your Honor, is assume and I'm stepping out here that it results in the confusion and that in the term opposing counsel, you use that interest included in the judgment. Well, interest included in the judgment would be to create the distinction where you render that language to have a meaning as well as not rendering any judgment ultimately subject to federal court jurisdiction and that interest that is, again, accrued interest at the time of the claim would probably arguably be inclusive of it. Although I really don't have a good source to cite that either other than the fact that you're trying to give that terminology meaning. So I guess my short answer is, Your Honor, I don't have an explanation for that. I believe it's wrong. I guess that's why I appealed it. Okay. So the third issue is the one that Judge Brown actually decided in your favor, it raised judicata. Correct, Your Honor. And all the rest judicata, just to briefly go through that, the Louisiana court, I'm sorry, the plaintiff's complaint alleges, and there's a copy of the state court proceeding petition in this filed into the record here. It's the same petition, it's a complaint petition, same issues alleged, same parties alleged, everything is exactly the same that's alleged. The trial court issued a final judgment as a final judgment is defined for federal court purposes, rest judicata. The appeal has not been dismissed for lack of a final judgment. The trial court decision has not been reversed. And in addition, counsel, the same counsel for the same parties requested authorization to substitute Mr. Moore as plaintiff in that matter. Whether that was correct or Louisiana law is clear that whether that was correct or not, he was granted that relief and that relief has not been appealed. In effect, he was given the opportunity to amend, to substitute himself. He chose not to do that, Your Honor. The issues brought here are the same identical issues. He's a privity, he has privity to the issues that arise. There's no distinction, all five of those elements are met. I think those are the two most relevant to the discussion of the opponent's rest. Double check and make sure I hit all my points. But yes, that's it, Your Honors. In terms of the amount of controversy, I was never able to get to a $75,000 there amount of controversy. It's just the only way you can do that is if you award, if you consider interest as it accrues indefinitely until you get there. There's no other interpretation of law that would ever allow you to find an amount of controversy that meets $75,000. If there's no further questions, I'm done. Okay, thank you, Mr. Dicken. Mr. Ballinger, you have five minutes on the button. Thank you, Your Honors. To address some of the issues briefly, with regard to citizenship, we have pointed in the supplemental letter brief that Mr. McKellar had confirmed in his deposition that he's been to Mr. Moore's house, that he had discussions at Mr. Moore's house, that Mr. Moore lived in Texas. The documents from the Secretary of State show Mr. Moore resides in Texas. You asked for pointing to something in the record. There is adequate information in the record with regard to Mr. Moore and his citizenship and where he lives. With regard to the amount of controversy, Your Honor asked, well, how did Judge Brown get to the minority and majority view? Read her opinion. She's pretty clear in how she gets to it. She goes through all the cases. We've cited to you Wright and Miller, which in Wright and Miller, it says... I may be mistaken, so correct me just as I correct lawyers. I thought she only cited the Snyder case. Did she explicate any other case? When you say she went through all the cases... What I'm saying is she went through the cases cited by plaintiff or, excuse me, cited by defendant and showed why they were wrong. What she said was, she said with regard to the State Farm case. State Farm addresses insurance policies. It was $50,000 total of insurance policies. So there wasn't an issue of interest and interest being accrued on that. That was a declaratory judgment action. The Phoenix versus Scott's case, the Kaddish case, with regard to that one, the issue of whether post-judgment interest could be included wasn't even addressed, but that case actually came down in favor of our side of it. The third case cited by them... Excuse me. Well, you tell me again, and maybe I missed it, tell me again your best case that you can cite for the contention that post-judgment interest should be counted. Sure. Well, first of all, looking at Wright versus Miller, Wright versus Miller states, if the judgment in one action includes interest, the amount of controversy in a suit to recover on the prior judgment is measured by the amount of the first judgment, including the interest. That is supported by the U.S. Supreme Court case of Brown versus Webster. We have also cited to you nine different cases that also stand for the same proposition. They are all cited in our brief. It is the Grunblatt case. It is the Brannon case. It is the Williamson case. It is the San Juan Hotel case. It is the Phoenix-Scott sports case, the Ritchie versus Ritchie case, Gambino. When I looked at those, but I don't have a fresh memory, and you do, so that's commendable, but maybe then, accepting your argument, what's the limiting principle? How do you avoid a litigant getting a judgment that's sufficiently below, significantly below, and just waiting? How do you answer that concern? Well, Your Honor, the distinction that is made by the courts is if it is something in the judgment. If the judgment provides, like this one, it says, this judgment has 5% interest until it's paid. If that's in the judgment, that's what the courts have said, that's included. If this would have just said, we're awarding, if this is a- So your answer is there is no limiting principle. That litigant with that type of judgment can wait until the day that the interest is sufficient and then walk into federal court. According to the case law, yes, Your Honor, but what's more important here is, that's not what's happened. We've been trying to collect this case since, collect this judgment since 2010. We have taken all kind of efforts to collect this judgment. We have gone to Texas to get a judgment. We have domesticated it in Louisiana. We have tried in state court to collect this judgment. We have now tried in federal court to collect this. This is not a matter of, well, we just sat on our hands and did nothing. No. Well, you still may prevail in state court. I think that the concern is, did you jump out of state court to try to make the identical argument in federal court shortly before or almost immediately upon receiving an adverse ruling there? Well, Your Honor, frankly, no. And his other side's counsel's representation is that it's the same suit. It's not. This was, Mr. Moore decided, you know what, look, I don't agree with the state court. I think the state court's completely wrong on how it got that. And so, Mr. Moore said, where do we go with this? I said, you know what, let's go to federal court. You have a claim in federal court. Let's go pursue it there. Because you know what, I think the state court did get it wrong. Why do I give him another chance to get it wrong again? Mr. Moore has his own separate and independent claim. And that's what's brought here. And whatever happened of whether Cleartrack was or wasn't an entity shouldn't affect Mr. Moore. Okay. Thank you, gentlemen. The case will be submitted. And this panel will adjourn until nine o'clock tomorrow morning. I believe that's right. Thank you very much.